This case is 4-1-7-0-3-1-4. People v. Wallace. For the appellant, we have James Waller. And for the appellee, Linda McClain. Mr. Waller, you may proceed. James Waller Good morning. My name is James Waller. I'm the Assistant Defender with the Office of the State Department Defender. On behalf of the Court Commission, I intend to stand on our briefing on the crimes evidence and speak with you this morning about how Charles Wallace was denied effective assistance of counsel in all three crucial stages of this case. Before trial, at trial, and in sentencing. Before trial, his counsel should have filed a motion to suppress the interrogation committee. Failing that, at trial, his counsel should have worked with the state or petitioned the court to redact the relevant and prejudicial portions of that video. Finally, Charles Wallace assumed he had some form of legal representation in the sentencing committee, where he effectively had none. Now, trial counsel was ineffective in any of the attempts to suppress the interrogation committee on the statements contained therein. It was unreasonably deficient performance by trial counsel to not even file a motion to suppress. We, in hindsight, looked to whether the unargued suppression motion would have been meritorious and whether there's a reasonable probability it exists that the outcome would have been different if the evidence had been suppressed. The second part of that is straightforward. The statements of confession that Charles makes are really the only evidence that the state has tying him to this crime. This is not a case where the evidence was a formality tying up a very strong case. The statements in the video were the entire United States of culpatory evidence. Without those statements, it's difficult to imagine the state receiving a trial without convincing a jury. So the real question is whether the motion to suppress these statements would have merit, or a reasonable chance of success. On here, we have to give you the details of the video. Now, the state spends some time arguing that Charles was not subject to custodial interrogation. I strongly disagree, and my reply brief analyzes the fact that he was custodial, but I don't need to waste your time on that because it doesn't matter. We aren't arguing that the statements should have been suppressed because he wasn't Mirandized. They should have been suppressed because Charles unequivocally invoked his right to remain silent, and almost certainly asked for a lawyer before being interrogated. Those constitutional protections aren't limited to custodial interrogations, but apply to any interactions of police. Willful interactions, carry stops, it doesn't matter. The constitutional right to remain silent and have an attorney present for questioning don't only apply when you're handcuffed. Charles Wallace has always had those rights, and when he invoked them during the Miranda Act, they should have been respected. But would you agree when he purportedly asked for an attorney that whatever he said, mumbled, grunted, was ambiguous and unclear? I believe that the officer, I believe that what he did was, I believe that he probably made a clear indication that was obscured and ambiguity caused by the officer not listening, not stopping what he's saying, and asking him to repeat himself. The, certainly his right, his indication of his right to remain silent is a strong one. Let me be a little more specific. As a court, we have to listen and decide what was said, and if we can't figure out what was said, isn't that what we will analyze our position or decision on? I absolutely agree, and I can't stand here and say what I listen to, what I hear, and say I'll take a lawyer. It's probably what he said, given the contextual clues, but we don't know that because the officer talked right over it. And I don't believe the state can create that type of ambiguity by not making audible what the defendant says on record. Other than what we read, the transcript, what audible, what clues are you referring to? The contextual clues as far as why I think he said, I'll take a lawyer. Yes, just the context of the reading, the conversation, and hearing that. Because it's directly in response to him being told that he has a right to an attorney. He then refuses to sign them, or initially refuses to sign them, or anything like that. And clearly, it goes directly to silence at the end of that. All those together, I think it's very clear that he did not intend to make a statement on the record without an attorney present, and was surprised to find out that he had done so. And given that he spends most of that video reviewing the Miranda card after the interrogation. What about the contextual clues of when he realizes he has made a statement, he makes some additional statements about the statement he had just made. What do you take from that? Well, I mean, I would almost think that he was getting to the line of mind of me, and my recollection is perfect, of exactly what he said at that point. But the point, I mean, what he says after it, I think is instructive, and to let us know whether or not it's clear that he had intended to evoke his right. I think the balance of that evidence of the statement shows that he did intend to evoke those rights. As I said, I think he definitely says the words remain silent after being told he has the right to do so. The officer ignores this and is right in his questioning. Now, that's why a motion to press would have happened there, and based on simply his indication of the right to silence the law. Finding that motion would have shifted the burden of the state to prove these statements were voluntary. Now, if he had, if the motion had been filed at hearing, they could have asked the officer, well, what did you hear him say? How did you interpret that? Why didn't you stop right there and ask him to clarify? What was your intent in continuing to talk and bulldoze into the statements? Those would have been instructive, and I think probably it's positive. But simply failing to file the motion was ineffective assistance to counsel. Excuse me. So I think it was efficient performance not to file it. Now, even if the constitutional issue of the video didn't exist, there's still a lot of irrelevant prejudicial material on that video. It had no business being played to a jury. We argued our briefs about the feasibility of removing every irrelevant statement from the video and whether that would disrupt the narrative flow of the interview. But at bare minimum, the second the officer tells Charles that he's under arrest, that video shouldn't stop. The state has made no credible argument that anything after that point is relevant to any questioning through a jury. And trial counsel is deficient in insisting that the playback be stopped upon arrest. And in a case like this where... Why is it irrelevant? He's making all these threats. That shows identity, doesn't it? Well, it's relevant... It shows intent, doesn't it? So why would the court redact that anyway, even if the motion was filed? Well, I don't know... Well, I think it's very irrelevant to the question of whether or not he lit a fire on that porch that day. Somebody lit it? That tends to suggest and identify him as the person who lit it, and he had the intent to light it. Those comments, to me, seem to suggest the court would not have redacted even with the motion. That's what I'm thinking. Well, that's possible. The motion should have been filed. It isn't my larger argument. Well, let me ask you this. Since he had already confessed at his house, when he was originally spoken to, what difference does any of this make? The officer's testimony in that confession is... All that week would be... I want to give him all the credit for the officer's testimony. The officer testifies... Well, I asked him the same question that I asked him on that video. The defense counsel said, you have a question you asked on the video, but you're not very clear about what date of fire you're talking about. Well, then I'd probably ask him other questions. Well, which was? He gives this conclusory... Well, I asked him questions, but he confessed to everything. Well, what questions did he ask? I don't remember. Yeah, but he made it pretty clear he asked questions about a fire on a porch, right? I don't know if I'd say pretty clear. He does say that he asked questions about a fire on a porch. And he says that Charles confessed. If that's the case, then... I don't believe that strong... That testimony standing by itself makes the case close, makes it questionable. It's not a very super strong case just with that officer's testimony. So, if we take the video out of the equation, there's definitely a probability that it would have some impact on the result of the case, but it wouldn't be complex enough to get an answer. Counsel, I agree with your argument. Let me just suggest this and look at it in this context, and that is, it would have been better if the officer were taking detailed notes of what had been said at the home, et cetera. Isn't that the very purpose of taking one downtown in a formal setting, starting to record and starting to interview to memorialize just what the defendant had to say? I mean, it makes sense, I guess, is what I'm trying to argue. Maybe it's sloppy. And the very strength of a videotaped confession is why we protect it so closely with these wonderful items, and why we need to err on the side of a clearly evoked expression of desire to not speak anymore, to remain silent. I think none of those issues are as egregious as what happened at the sentencing hearing, though. It's one thing to not prepare your client for how to make a statement of malecution that conveys remorse, while still protecting his rights. It's another thing to present no mitigation, or even a further mitigation, to the assault. But to offer no argument on the sentencing options, after hearing the state stand up and ask for the maximum sentence, because your client, quote, has no recommendation for the court, is to simply fail to perform a defense attorney. It's not only the client's purview to make that decision. He isn't the one with the knowledge of what the sentencing options are, and he doesn't know that this is your opportunity to argue for him to leave the sentence. Based on that statement, I'm not entirely sure the defense counsel knew that this was the opportunity to make their argument for him to leave the sentence. The state cites, to be short, for the proposition that, quote, strategic decision to offer no argument during the sentencing phase goes within the range of professional, reasonable judgments that the defense attorney can make. And this is what the first district meant in that case by strategic. In that case, defense counsel refused to make any argument at sentencing because he claimed to not have had time to prepare. The first district appellate court is accusing the trial counsel in that case of sandbagging, attempting to create a reversible issue by not making the case at trial. That's not the case here. Defense counsel is not sandbagging. Defense counsel simply misunderstood what his responsibilities were at sentencing versus his client's responsibilities. He was not attempting to create a reversible issue. He was relying on the legal knowledge and experience of his client. If Charles Wallace had told his attorney, hey, go recommend to that court that I should court supervision for these felony charges, he would have been just as unprofessional as if he'd made more of them. But at least he would have advocated for his client at that point. What transpired at the sentencing, again, was not just ineffective assistance counsel. It was no assistance counsel. On the whole, we ask that this court make Mr. Wallace's sentence versus conviction on any case of further proceedings to a constant resolution. Any more questions? Seeing none, Mr. Waller, thank you. You'll have rebuttal if you so desire. Thank you. Ms. McClain. Can you please record? Can I please? The state is arguing that defendant was not defied of effective assistance of counsel in this case. Defendant's first argument of concern was the failure to file a motion to suppress statements. There are several reasons why this was not ineffective assistance. The first is that the motion would not have been meritorious. Defendant was not subject, in this case, to custodial interrogation. The right to an attorney does not exist outside the context of custodial interrogation, and one cannot invoke a right that does not yet exist. In addition, during non-custodial questioning, the police need not immediately stop their efforts when the person being questioned expresses a desire not to speak further. The circumstances of this interview were not coercive, even though the setting was a case meeting. The interview was fairly brief, the tone friendly and conversational. Defendant wanted to go to the hospital and the officers said he could after giving a quick interview. So that means he wasn't free to leave then, doesn't it? I would say it was like a brief talk. Well, if you're free to leave after I get done asking my questions, would that be a fair way to explain what the officers communicated? That sounds like custody to me. Go ahead. This is about the most laid-back interview I've ever seen, where the officer asks him to sit in a chair, the defendant says, no, I've got to loosen up and do my calisthenics first, and the officer says... I think Governor Blagojevich did some calisthenics when he was arrested, is that right? Do you remember that? I don't remember that. Anyway, there was only one officer present, he was not told he was under arrest, not shown any weapons or force, physically restrained, and the defendant voluntarily got in a squad car to come down to the police department to give this side of the story. And in fact, he had an extensive criminal background, so he should have known, he should have appreciated the situation. Ms. McClain, I want to fast-forward just a moment here and get into the specifics, because this is, you know, there's a lot of ground to cover here. In the... Mr. Waller says that the defendant invoked his right to an attorney, and that the video identifies language, I'll take a lawyer, just assuming for the sake of my question that that is identifiable, those words. You say that's not a specific enough invocation of the right to counsel. Why not? The test is whether the defendant articulated with sufficient clarity that a reasonable police officer in the circumstances would understand a statement to be a request for an attorney. In this case, it's not with sufficient clarity that the reasonable police officer in the circumstances would understand it to be a request, because the defendant hung forward, doing sit-ups, while the officer is reading from Miranda Rights from a sheet of paper held in front of him, appearing to obscure his vision of an offense. Well, what... so I want to understand that, because I read that in your brief. Why is the placement of the sheet somehow relieving the officer of his responsibility to make a determination that the defendant is invoking his right to counsel? I don't think it's the police officer's duty to determine whether he's invoking his right to counsel. Are you saying that potentially the officer didn't hear those words? I'm thinking he did not hear those words. Okay. Do we have any direct evidence on that in the record, that the officer didn't hear what the defendant said? I think that the fact that they're talking at the same time, the defendant's on the floor doing sit-ups while he's seeing something, I think that the officer does not stop seeing what he's seeing. I think he did not hear it. It may not be this case, but is there a case where the court of review listens to the tape and clearly identifies the defendant saying, I want a lawyer, and the officer being able to say, I didn't hear it, and that being reasonable on the part of the officer for not stopping the interview at that point. That being found to have relieved the officer from discontinuing the interrogation at that point. Because it seems that's something, what you're arguing here. The circumstantial evidence tends to indicate that the officer didn't pick up on what the defendant said, so that relieves him of any obligation to either clarify what the defendant said or stop the interview. I cite in my brief Supreme Court case, it says in a statement, that the officer has no duty to clarify an ambiguous or equivocal statement by the defendant. The reason for this is that a rule requiring the immediate cessation of questioning for clarification would transform Miranda's safeguards into a wholly irrational obstacle to legitimate police investigative activity. But if it's an unequivocal request for counsel, and the officer, just because at a later point he says he didn't hear it, or even more tenuous, this circumstance where the state is arguing that the placement of the paper copy of Miranda might have inhibited the officer's ability to hear the defendant, that's different than what you're describing in the Supreme Court decision, because that involves ambiguous language. I'm talking about unambiguous language. I think this case is ambiguous language, in addition to the fact that the officer doesn't hear it. What about the statements that were made by the defendant? Mr. Waller says some of these just clearly are irrelevant, and there's no reasonable explanation by the defense attorney for not moving to suppress those statements. What about the defendant's statement, I've been a criminal too goddamn long. What would the relevance, what would be the reason why that would be admissible? I, um, that's the second argument. The failure to account for stereotypes or ask for death quotients in the video. I think that, um, I'm not exactly sure if that's at the tail end of the interview. It is, it's after the interview had concluded and the defendant was being placed under arrest, so I think he's being handcuffed at that point, and that then follows. Well, there are many comments throughout the entire interview, and the only one that's cited by my opponent in his brief is the ones toward the very end. And I think in the entire interview, that little comment at the end cannot be that part of the issue. And that's my first argument. You say in your brief that it would have come in anyway, or the jury already knew about his criminal record anyway, or would have known. How is that? Because of the comments he made before in the body of the video. I see, but if we take Mr. Waller's representation that he wasn't just focusing on these latter comments, but his assertion is that defense counsel is ineffective for not moving to suppress all of these irrelevant comments or statements throughout the interview. How do you address the relevancy of those statements about the defendant's criminal record? I think that it gives a picture of the defendant. The video as a whole gives a picture of the defendant that would be lacking if the video was not in there. Because it kind of depicts him as a somewhat delusional and not always, you know, he's definitely kind of sympathetic character in the video. I was intrigued by your argument that somehow these comments that were being made were potentially a strategic, that the defense counsel made a strategic move to allow them in because it allowed the jury to sympathize with the defendant. And it's hard to really find much sympathy-provoking commentary in what he says because every other word is profane and threats to do bodily harm to the victims in this case. How would that have engendered sympathy? I think the video shows he had a reason for his actions. He has a kind of delusional reason for his actions. He thought all these people were against him and that's why he got back at them. Yes, but that's not a defense. It's not a legal defense. It's a sympathy defense. In fact, to follow up on what Justice Harrison just observed, isn't it, well, isn't it reasonable to argue that the only possible way the defendant could prevail here was for his attorney to file a motion to suppress that statement he made at the police station and hopefully win? Because that's the only way he was going to possibly win this case. And so why wouldn't he file a motion and take a shot at it? He had already confessed at the house, so this is just... Yeah, but he might have been able to explain that away. But once that confession at the police station comes into evidence, that's it. You don't really seriously dispute that, do you? But that was pretty much the end of the case. I think that the confession at the house was equally as... I mean, the officer testified he admitted to everything at the house. It's pretty... But its strength is based upon comparing it to what the officer testifies was said at the house compared to what is in the recording. And so, without the recording, you can't compare the two. And I want to dovetail on something Justice Turner asked. Because I understood your argument. I think it's a compelling argument that potentially it's a strategy. But that's only if we concede the recording is already in. The defense counsel's strategy is the jury is going to observe my client, therefore hear all these things, therefore it's a strategy that he's pretty sympathetic on the video. So that lends to the argument that justices are making here. Why not... Or asking some argument, they're asking questions. But why not take your best shot and file a motion to suppress? Well, I think that... We evaluated whether there was any emphasis in the counsel to go back to what reason did he do it in. Maybe it was child strategy. Would it have been meritorious? I don't think it would have been meritorious. Because I think there's a lot in that video that was relevant and certainly needed to be heard. And was it prejudicial? I mean, the question... I mean, we don't know the office of physical origin detail what the defendant said at the house. However, I mean, that's a matter of post-conditions. We don't know exactly. Counsel, I want to go back to... the statement he made regarding whether he was invoking his right to counsel. You say in your brief on page 12, the officer is not required to ask the defendant to clarify his statement in order to ascertain if he was, in fact, attempting to invoke his right to counsel. There's no citation for that proposition. Is there a case that says that? Yeah. I'm looking at your brief on page 12 which would be the last full sentence. So... I know it's hard to follow when I'm reading it to you, but you can read it real quickly. The last full sentence at the bottom of page 12. Starting with the officer. Page 10. Is it Davis? Page 12. Oh, okay. Thank you. That's on page... And that's the Davis case? Okay. Well, that answers my question, then. Thank you. I have a question in regards to the other crimes evidence. There was a motion in Lemonade filed by the defendant which was denied. Mr. Waller is arguing that the trial court failed to balance the probative value against the prejudicial effect of the other crimes evidence. And you indicate that the trial court did that in this case, that it did engage in that analysis. You say at page 36 of your brief, the comments of the trial court clearly indicate the court understood the necessity of and applied the required balancing test. And what I wanted to know is what comments of the trial court indicated that the court understood the necessity of the required balancing test? I think that you can look at... My argument is that the court did not participate but it did apply it implicitly. And are you indicating... Well, you're saying something else that I'm not getting to yet, which is the application of the balancing test. You wrote that the comments of the trial court clearly indicate the trial court understood the necessity of the required balancing test. So are there any comments by the trial court that reflected its understanding of the necessity of the balancing test? In ruling on motion, the court noted that the state was limiting its evidence and that a limiting instruction would be given, implicitly finding that the prejudicial nature would be minimized. Okay. I'm just going to add an editorial comment to me that is really giving the trial court the benefit of the doubt in terms of indicating it reflects the trial court's awareness that it was required to engage in a balancing test. You cite to people the Abernathy in that same paragraph of your brief. And in that case, the court very clearly, the trial court very clearly indicated that it was weighing the probative value versus prejudicial effect of the evidence. So I think this case is qualitatively different in terms of the record reflecting that the trial court, A, understood the necessity of engaging in the balancing test, and B, its actual engagement in the balancing test. I think that also in this case, defense counsel made an argument that the evidence was not sufficiently probative to outweigh the prejudicial value, so it stayed with the test. And then I think the court's comments indicated it applied the test by finding that the prejudicial nature would be minimized. Okay, can I pick up from there? You're saying that the trial counsel for defendant laid out that the trial court was to engage in a balancing test? And so perhaps you're right then, that that then would be sufficient evidence that what the trial court did subsequently was actually engage in that test. Can you read to me what the trial court's, or the defense counsel's comments were in that regard? Um... But this, I don't want you to lose all of your time here. This is during the hearing on the motion in Lemonade, right? Yes. Okay. You think that's in there, though? I believe it is. And I came to that argument because of Abernathy. In Abernathy, the court looks at defense counsel's arguments, and then they look at the court's ruling. In that case, the defense counsel's argument that the defendant would be prejudiced. Well, Abernathy, the trial court, this is the appellate court's quotation of the trial court's comments. The trial court, quote, in order for the court to, quote, weigh that against what prejudicial effect it might have upon the defendant, close quote. I mean, those words clearly indicated that the trial court was engaging in a balancing test. Okay. What page of the record is that? I don't see any thank you. Is there any rebuttal? Okay. Thank you. If this court is clarifying a couple of issues, the court asked counsel a moment ago about the ambulance ride. What was the evidence of custodial activity? And counsel indicated, well, it was brief. It was brief. The word she's missing is it was a brief detention. It was absolutely a brief detention. Even if it was for a few minutes, the whole interview was only for a few minutes. And there's not a... It was a custodial interrogation based on that. And, again, we assert that you don't have to have a custodial interrogation to have those 50 minute rides. I didn't see a citation for that in the search warrant from counsel, but my right to have an attorney present at counsel is not a priority. As far as... As far as the Davis case goes, the language counsel cites on page 10 was no brief. Therefore, if the accused's statement is that maybe it was sort of critical, the police officer has no need to clarify it. The court has to find the statement that maybe it was sort of critical. And, again, the remain silent... I don't think a legal argument can make that that was something that was sort of critical. She had remain silent. He said it was remain silent. I don't believe that the invocation... I'll take a lawyer was that maybe it was sort of critical either because what we have to look at is his intent. Was his intent clearly expressed? And that's not what was the result of obfuscation by the police officer. What if it's apparent, though, from the video recording that the two were speaking at the same time and even though we could hear potentially the defendant saying, I'll take a lawyer, it's obvious that the officer who's speaking at the same time wouldn't be able to. Shouldn't we factor that in in determining whether or not the officer continued the interrogation in good faith? I would absolutely take that into consideration. But in questioning whether or not the file was suppressed in the first place, no, because that question mark is in the air and it could have been dispositive of this case. So the fact that that officer could have said, yeah, I heard him. I heard him, but I wanted to get to my questioning and I was going to go back and ask him about it and I forgot. I mean, there are reasonable things the officer could say that indicate that he heard that case because he could have answered it that way in the motion of file. Thank you very much. Okay, thanks to both of you. The case is submitted. The court stands in recess.